UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONFORMIS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ACACIA RESEARCH GROUP LLC, ADVANCED SKELETAL INNOVATIONS LLC, BONUTTI SKELETAL INNOVATIONS LLC; and PHILLIP MITCHELL,<br><br>　　　　Defendants. | C.A. NO 1:13-CV-10377-PBS |

**DEFENDANTS ACACIA RESEARCH GROUP LLC AND PHILLIP MITCHELL'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS**

## **TABLE OF CONTENTS**

**Page**

I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ................ - 2 -

    A.    ARG Accessed Plaintiff's Website ............................................... - 2 -

    B.    Bonutti Skeletal Acquires The '896 Patent, Files Suit Against
        Plaintiff, and ............................................................................... - 4 -

    Plaintiff Reflexively Files This Action.................................................... - 4 -

II.    ARGUMENT .............................................................................................. - 4 -

    A.    Legal Standard ............................................................................. - 4 -

    B.    The Complaint Does Not And Cannot State A "Case Or
        Controversy" To Support The Declaratory Relief Claims. ............. - 5 -

        1.    There Is No Case Or Controversy Between ARG And
            Plaintiff Because There Is No Adverse Legal Interest
            Between The Parties. ........................................................... - 6 -

            a.    ARG Is Not An Owner Or Licensee Of The '896
                Patent. ........................................................................ - 6 -

            b.    A Parent Company Of A Patent Holder Is Not A
                Proper Defendant For A Declaratory Relief Claim..... - 7 -

        2.    The Complaint Also Does Not Allege ARG Took Any
            Affirmative Act To Enforce Any Right Concerning The
            '896 Patent......................................................................... - 9 -

    C.    Plaintiff's State Law Claims Fail Because the Conduct That
        Forms The Gravamen Of These Claims Is Privileged. ................... - 9 -

        1.    The Noerr Pennington Doctrine Bars The State Laws
            Claims Because They Are Based On Protected Activity. ... - 10 -

        2.    The Massachusetts Litigation Privilege Also Bars The
            State Law Claims. ............................................................... - 12 -

    D.    The Breach of Contract Claim Fails............................................ - 14 -

        1.    The Complaint Fails To Allege A Valid Contract. .............. - 14 -

        2.    The Complaint Fails To Allege A Breach Because
            Neither ARG Nor Mitchell Used The Information
            Obtained From The Website For A Commercial Purpose. . - 15 -

i

# TABLE OF CONTENTS (Cont'd)

**Page**

E.   The Misappropriation Claim Fails Because The Complaint Does Not Adequately Plead That The Information Was Proprietary Or Any Reasonable Steps to Preserve The Secrecy Of The Information. .................................................................. - 16 -

F.   The Unfair and Deceptive Trade Practices Claim Fails Because The TOU Is Not A Valid Agreement. .......................................... - 17 -

G.   The Misrepresentation Claim Fails Because The Complaint Does Not Allege Any Misrepresentation Or Reliance. ................. - 18 -

III.   CONCLUSION .................................................................... - 19 -

TABLE OF CONTENTS

## TABLE OF AUTHORITIES

**Page(s)**

CASES

24 Hour Fitness U. S. v. Annis,
  No. 04-257-SM, 2004 U.S. Dist. LEXIS 23702 (D.N.H. Nov. 18, 2004) .............................. 11

Akar v. Fed. Nat'l Mortg. Ass'n,
  845 F. Supp. 2d 381 (D. Mass. 2012) ....................................................................................... 17

Anderson v. Atlantic Recording Corp.,
  No. 07-CV-934-BR, 2009 U.S. Dist. LEXIS 106390 (D. Or. Nov. 12, 2009) ............ 11, 12, 16

Arris Group Inc. v. British Telecomm. PLC,
  639 F.3d 1368 (Fed. Cir. 2011) ................................................................................................... 6

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ..................................................................................................................... 4

Ass'n for Molecular Pathology v. United States PTO,
  653 F.3d 1329 (Fed. Cir. 2011) ................................................................................................... 9

Bagg v. HighBeam Research, Inc.,
  862 F. Supp. 2d 41 (D. Mass 2012) .......................................................................................... 15

BE&K Constr. Co. v. NLRB,
  536 U.S. 516 .......................................................................................................................... 10, 11

Beam Laser Sys., Inc. v. Cox Commun'ns, Inc.,
  117 F. Supp. 2d 515 (E.D. Va. 2000) ......................................................................................... 7

Beecy v. Pucciarelli,
  387 Mass. 589 (1982) ................................................................................................................ 13

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ..................................................................................................................... 2

Bio-Technology Gen. Corp. v. Genentech, Inc.,
  267 F.3d 1325 (Fed. Cir. 2001) ................................................................................................. 10

Blacksmith Invs., LLC v. Cives Steel Co.,
  228 F.R.D. 66 (D. Mass. 2005) ................................................................................................. 19

Capitol Indem. Corp. v. Freedom House Dev. Corp.,
  487 F. Supp. 839 (D. Mass. 1980) ............................................................................................ 18

Cvent, Inc. v. Eventbrite, Inc.,
  739 F. Supp. 2d 927 (E.D. Va. 2010) ........................................................................................ 16

DOCSOC/1619310v3/101022-0031

*Davric Maine Corp. v. Rancourt,*
    216 F. 3d 143 (1st Cir. 2000)....................................................................................10, 11

*Depuy, Inc. v. Zimmer Holdings, Inc.,*
    384 F. Supp. 2d 1237 (N.D. Ill. 2005) ....................................................................7

*Doe v. Nutter, McClennen & Fish,*
    41 Mass. App. Ct. 137 (1996)..........................................................................13, 14

*Encompass Ins. Co. of Mass. V. Giampa,*
    522 F. Supp. 300 (D. Mass. 2007) .........................................................................13

*GMP Tech., LLC v. Zicam, LLC,*
    No. 08-C-7077, 2009 U.S. Dist LEXIS 115523 (N.D. Ill. Dec. 9, 2009)................8

*Greebel v. FTP Software, Inc.,*
    194 F.3d 185 (1st Cir. 1999)....................................................................................5

*Hocking v. U. S.,*
    C.A. No. 10-11007-DJC, 2011 U.S. Dist. LEXIS 35926 (D. Mass. Apr. 1, 2011)...................4

*Hotmail Corp. v. Van Money Pie, Inc.,*
    Case No. C98-20064 JW, 1998 U.S. Dist. LEXIS 10729 (N.D. Cal. April 16, 1998)...........16

*In re Zappos.com Sec. Breach Litig.,*
    2012 U.S. Dist. LEXIS 141803 (D. Nev. Sept. 27, 2012) .....................................14

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,*
    599 F.3d 1377 (Fed. Cir. 2010)................................................................................9

*Int'l Floor Crafts, Inc. v. Adams,*
    477 F. Supp. 2d 336 (D. Mass 2007) ..........................................................12, 13, 18

*Intamin, Ltd. v. Magnetar Techs. Corp.,*
    483 F.3d 1328 (Fed. Cir. 2007)..............................................................................12

*Lawton v. Dracousis,*
    14 Mass. App. Ct. 164 (1982)................................................................................18

*Mann v. Chase Manhattan Mortg. Corp.,*
    316 F.3d 1 (1st Cir. 2003)........................................................................................5

*Mars, Inc. v. Coin Acceptors, Inc.,*
    527 F.3d 1359 (Fed. Cir. 2008)................................................................................6

*McBride v. Mass. Comm'n Against Discrimination,*
    No. 08-10797-NMG, 2009 WL 5201733 (D. Mass. Dec. 10, 2009) ........................5

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007)................................................................................................6

TABLE OF AUTHORITIES

Merial Ltd v. Intervet, Inc.,
    430 F. Supp. 2d 1357 (N.D. Ga. 2006) ..................................................................7

Morales-Tañon v. P.R. Elec. Power Auth.,
    524 F.3d 15 (1st Cir. 2008) .................................................................................5

New West, L.P. v. City of Joliet,
    491 F.3d 717 (7th Cir. 2007) .............................................................................10

Newmatic Sound Sys. v. Magnacoustics, Inc.,
    No. C 10-00129 JSW, 2010 U.S. Dist. LEXIS 40018 (N.D. Cal. Apr. 23, 2010)....................8

North Am. Catholic Educ. Programming Found., Inc. v. Cardinale,
    567 F.3d 8 (1st Cir. 2009) ..................................................................................19

One Commc'ns Corp. v. Sprint Nextel Corp.,
    495 F. Supp. 2d 219 (D. Mass. 2007) ..................................................................5

Q-Pharma, Inc. v. Andrew Jergens Co.,
    360 F.3d 1295 (Fed. Cir. 2004)...........................................................................12

Ruggers, Inc. v. U.S. Rugby Football Union, Ltd.,
    843 F. Supp. 2d 139 (D. Mass. 2012) .................................................................14

SanDisk Corp. v. STMicroelectronics, Inc.,
    480 F.3d 1372 (Fed. Cir. 2007).............................................................................9

Site Microsurgical Sys., Inc. v. The Cooper Cos., Inc.,
    797 F. Supp. 333 (D. Del. 1992).........................................................................8

Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,
    620 F.3d 1305 (Fed. Cir. 2010)............................................................................7

Sriberg v. Raymond,
    370 Mass. 105 (1976) .......................................................................................12

Theme Promotions, Inc. v. News Am. Marketing FSI,
    546 F.3d 999 (9th Cir. 2008) .............................................................................10

Thomas v. Housing Auth. of County of Los Angeles,
    No. CV 04-6970 MMM, 2005 U.S. Dist. LEXIS 46426 (C.D. Cal. June 3, 2005)...........11, 12

Ticketmaster L.L.C. v. RMG Techs., Inc.,
    507 F. Supp. 2d 1096 (C.D. Cal. 2007) ...............................................................16

Tomaiolo v. Mallinoff,
    281 F.3d 1 (1st Cir. 2002)..................................................................................10

Top Victory Electronics v. Hitachi, Ltd.,
    No.C10-01579CRB, 2010 U.S. Dist. LEXIS 125003 (N.D. Cal. Nov. 1, 2010)......................8

TABLE OF AUTHORITIES

Travel Sentry v. Tropp,
　　No. 06-cv-118-JD, 2006 U.S. Dist LEXIS 87292 (D. N.H. Dec. 1, 2006)...........................6, 7

Tropeano v. Atlantic Monthly Co.,
　　379 Mass. 745 (1980) .................................................................................................16

United Air Lines, Inc. v. Gregory,
　　716 F. Supp. 2d 79 (D. Mass 2010) ..........................................................................18

Universal Commc'n Sys., Inc. v. Lycos, Inc.,
　　478 F.3d 413 (1st Cir. 2007)........................................................................................5

USM Corp. v. Marson Fastner Corp.,
　　379 Mass. 90 (1979) ...................................................................................................17

Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'n, Inc.,
　　858 F.2d 1075 (5th Cir. 1988) ....................................................................................10

Visnick v. Caulfield,
　　73 Mass. App. Ct. 809 (2009)....................................................................................13

Watkins v. Omni Life Sci., Inc.,
　　692 F. Supp. 2d 170 (D. Mass. 2010) ..........................................................................2

## STATUTES

28 U.S.C. § 2201(a) ................................................................................................................6

35 U.S.C. §§ 100, 281 ...........................................................................................................6

Federal Rule of Civil Procedure 8 ........................................................................................4

Federal Rule of Civil Procedure 9 ..................................................................................18, 19

Federal Rule of Civil Procedure 12 ......................................................................................4

## OTHER AUTHORITIES

8 Chisum on Patents § 21.03[4] (Matthew Bender 2009) ......................................................6

Donna M. Sherry, Doing Business On-Line.........................................................................16

TABLE OF AUTHORITIES

**INTRODUCTION**

This action is a misguided attempt by ConforMIS, Inc. ("Plaintiff") to justify the transfer of an already pending litigation.  On September 10, 2012, Bonutti Skeletal Innovations, LLC ("Bonutti Skeletal") filed a patent infringement suit against Plaintiff concerning U.S. Patent No. 7,806,896 (the "'896 Patent") in the District of Delaware (the "Infringement Suit").  More than five (5) months later, Plaintiff filed this action to seek declaratory relief regarding the same patent at issue in the Infringement Suit.  In a transparent attempt to avoid the first to file rule, Plaintiff asserts state law claims and has joined new parties, including Bonutti Skeletal's parent company, Acacia Research Group, LLC ("ARG"), based on the alleged harm caused by the Infringement Suit.  However, the Complaint's claims against these additional parties fail as a matter of law.

The Complaint asserts two (2) declaratory relief claims for non-infringement or invalidity of the '896 Patent.  The Complaint, however, does not allege that ARG has any rights to the '896 Patent.  ARG cannot sue affirmatively for patent infringement because it lacks any cognizable interest in the '896 Patent.  Under established law, there simply is no case or controversy between ARG and Plaintiff.  Since Bonutti Skeletal is the licensee of the '896 Patent and is prosecuting the Infringement Suit, Plaintiff may receive all its requested declaratory relief from Bonutti Skeletal (assuming Plaintiff can establish its claims).  ARG, therefore, is not a proper defendant for declaratory relief.

Plaintiff also alleges various state law claims against ARG and an employee, Phillip Mitchell ("Mitchell"), based upon Mitchell accessing Plaintiff's publicly available website as part of a standard pre-suit investigation into infringement by Plaintiff.  While Plaintiff alleges that accessing the website was a prohibited "commercial use" under its Terms of Use (the "TOU"), the only injury Plaintiff alleges is the filing and prosecution of the Infringement Action.  Under the

MEMORANDUM OF POINTS AND AUTHORITIES

Noerr Pennington doctrine and Massachusetts litigation privilege, the right to petition, including pre-suit activities incidental to the action, are immune from civil liability.

Additionally, the breach of contract claim fails because the Complaint does not allege facts to show that Mitchell and ARG ever entered into a contract for the TOU.  Indeed, Courts repeatedly have declined to enforce TOU's like Plaintiff's (which is attached as Exhibit B to the Complaint).  Moreover, Mitchell and ARG's alleged "commercial use" of information from the website by filing suit is not a breach of the TOU, and even if it was, it is protected activity.  The Complaint's misrepresentation and other claims fail for similar reasons.

Consequently, ARG and Mitchell respectfully request that the Court grant their motion.

## I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

### A.  ARG Accessed Plaintiff's Website

Plaintiff's website posts typical information about Plaintiff's business, such as product offerings, company news, and investor relations.  (Dkt. No. 1, Complaint ("Compl.") ¶ 17 & Ex. B at 1.)  Anyone may freely access the website, but according to the Complaint, certain portions of the website require registration.  (See Compl. ¶17.)  While not detailed in the Complaint, the registration process simply requires a person to provide contact information.  (See Compl. ¶¶ 17, 25.)  In a conclusory fashion, the Complaint alleges that the website contains proprietary and confidential business information that is, by Plaintiffs' own admission, available to undefined "customers or potential customers … and their agents or representatives, as well as physicians, CT technologists, imaging centers, and related healthcare providers…."  (See Compl. ¶ 20.)  The website, for all practical purposes, appears to be a marketing tool, through which Plaintiff can access potential customers.  (See Compl. ¶ 20.)

---

[1] For the purposes of this motion, ARG and Mitchell accept the Complaint's allegations as true, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), except those allegations that are contradicted by exhibits to the Complaint.  See Watkins v. Omni Life Sci., Inc., 692 F. Supp. 2d 170, 178 (D. Mass. 2010).

Mitchell serves as a vice president of engineering for ARG.  (Compl. ¶ 18.)  On May 23, 2012, Mitchell purportedly accessed Plaintiff's website and registered by providing contact information.  (Compl. ¶¶ 17, 25.)  The Complaint does not allege that the information Mitchell provided was false.  (Compl. passim.)  Indeed, Plaintiff was able to use the information Mitchell provided to contact Mitchell.  (Compl. ¶ 25.)  After registering, Mitchell had full access to Plaintiff's website and browsed the site.  (Compl. ¶ 17.)

Plaintiff alleges that its website contained the TOU and that Mitchell (and ARG) entered into a contract on that basis.  (Compl. ¶¶ 18-21 & Ex. B.)  The TOU is a fifteen (15) page document that covers topics ranging from Plaintiff's ownership of the information posted on the website to Plaintiff's right to monitor the website's public forum.  (See Compl., Ex. B.)  The Complaint does not allege where the TOU may be found on the website.  (Compl. passim.)  Plaintiff also does not allege that Mitchell saw the TOU or had to encounter it in accessing the website.  (Compl. passim.)  In fact, the TOU attached as Exhibit B to the Complaint suggests that the TOU is provided under the "About Us" menu of the website, as this is the tab highlighted.  (Compl., Ex B.)  However, even if a person clicked the "About Us" menu, it is not clear how he would locate the TOU, as the TOU is not listed in the drop down menu on the left side of the screen shot.  (Compl., Ex. B.)

The TOU contains language prohibiting competitors from using the information provided on the website.  (Compl., Ex. B at § 2.)  The TOU suggests that Plaintiff included it to prevent competitors from copying its products.  Nothing in the TOU prevents third parties from reviewing the website to determine whether Plaintiff has violated their legal rights.  (Compl. passim.)  The opposite is true.  The TOU provides a process for any person to inform Plaintiff of copyright infringement found on the website.  (Compl., Ex. B at § 28.)

### B. Bonutti Skeletal Acquires The '896 Patent, Files Suit Against Plaintiff, and Plaintiff Reflexively Files This Action.

On or about June 8, 2012, MarcTec LLC assigned the '896 Patent to ARG.  (Compl. ¶ 26.)
ARG, in turn, assigned the '896 Patent to its wholly owned subsidiary, Advanced Skeletal, LLC
("Advanced Skeletal").  (Compl. ¶ 27.)  Advanced Skeletal later assigned the '896 Patent to its
wholly owned subsidiary, Bonutti Skeletal, on or about August 31, 2012.  (Compl. ¶ 28.)  On
September 10, 2012, Bonutti Skeletal filed the Infringement Suit against Plaintiff concerning the
'896 Patents in the District of Delaware.  (Compl. ¶ 29.)

On February 25, 2013, Plaintiff filed this suit seeking a declaration of non-infringement
and invalidity of the '896 Patent.  (Compl. ¶¶ 33-45.)  Plaintiff also asserted claims for breach of
contract, misappropriation of confidential business information, unfair and deceptive trade
practice, and misrepresentation, all based upon the investigation and filing of the Infringement
Suit (the "State Claims").  (Compl. ¶¶ 46-71.)  ARG and Mitchell now move to dismiss.

## II.   ARGUMENT

### A.   Legal Standard

A district court should dismiss a complaint when its allegations fail to state a claim upon
which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint must include "a short and
plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).
A court normally accepts as true all factual allegations in the complaint and must draw all
reasonable inferences from those allegations, construing the complaint in the light most favorable
to the plaintiff.  Hocking v. U. S., C.A. No. 10-11007-DJC, 2011 U.S. Dist. LEXIS 35926 (D.
Mass. Apr. 1, 2011).  However, a court should not accept "threadbare recitals of a cause of
action's elements, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662,
677-83 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

"Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct." McBride v. Mass. Comm'n Against Discrimination, No. 08-10797-NMG, 2009 WL 5201733, at *3 (D. Mass. Dec. 10, 2009) (internal citations omitted); accord Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008) (a plaintiff must plead "more than labels and conclusions," and his factual allegations must be sufficient to raise a right to relief above the speculative level").

Claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standards. Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 427 (1st Cir. 2007).  In alleging fraud, the plaintiff must set forth specific facts including the "time, place, and content of an alleged false representation" as well as the basis for inferring scienter.  Greebel v. FTP Software, Inc., 194 F.3d 185, 193-94 (1st Cir. 1999).

Rule 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, "federal jurisdiction is never presumed . . . [r]ather the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  One Commc'ns Corp. v. Sprint Nextel Corp., 495 F. Supp. 2d 219, 222 (D. Mass. 2007) (citing Murphy v. U. S., 45 F.3d 520, 522 (1st Cir. 1995)) (internal quotations omitted).

A court may decline leave to amend "as a matter of law, where a proposed amendment would not cure the deficiencies in the original complaint."  Mann v. Chase Manhattan Mortg. Corp., 316 F.3d 1, 6-7 (1st Cir. 2003).

## B.  The Complaint Does Not And Cannot State A "Case Or Controversy" To Support The Declaratory Relief Claims.

Plaintiff seeks declarations of invalidity or non-infringement for the '896 Patent.  The elements of a declaratory relief claim are co-extensive with the Article III standing.  The Declaratory Judgment Act provides in pertinent part:

MEMORANDUM OF POINTS AND AUTHORITIES

> In a case of actual controversy within its jurisdiction . . . any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration….

28 U.S.C. § 2201(a).  "[T]he phrase 'case of actual controversy' … refers to the type of 'Cases' and 'Controversies' that are justifiable under Article III." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007).  A court's exercise of jurisdiction must resolve a "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id.; Arris Group Inc. v. British Telecomm. PLC, 639 F.3d 1368, 1374 (Fed. Cir. 2011).

### 1.   There Is No Case Or Controversy Between ARG And Plaintiff Because There Is No Adverse Legal Interest Between The Parties.

#### a.   ARG Is Not An Owner Or Licensee Of The '896 Patent.

A proper defendant in a declaratory relief action for non-infringement or invalidity is a party who has standing to sue as a plaintiff in an infringement case. Travel Sentry v. Tropp, No. 06-cv-118-JD, 2006 U.S. Dist LEXIS 87292, *6-7 (D. N.H. Dec. 1, 2006) (citing to Fina Research S.A. v. Baroid Drilling Fluids, Inc., 141 F.3d 1479, 1481 (Fed. Cir. 1996) (table case)); see also 8 Chisum on Patents § 21.03[4] (Matthew Bender 2009).  Standing in an infringement action rests with a patent owner or exclusive licensee.  35 U.S.C. §§ 100, 281; Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1367 (Fed. Cir. 2008).

Here, the Complaint does not allege that ARG has the necessary interest in the '896 Patent to sue as a plaintiff in an infringement action.  The Complaint does not allege that ARG owns the patents-in-suit.  (See Compl. passim.)  The Complaint also does not allege that ARG is a licensee of the '896 Patent.  (See Compl. passim.)  The lack of such averments preclude a "case or controversy" between ARG and Plaintiff.

Moreover, Plaintiff cannot cure these deficiencies.  The Complaint admits that ARG does not own or have any rights to the '896 Patent, but instead assigned all rights it had in the '896

---

Patent to Advanced Skeletal.  (Compl. ¶¶ 27-28.)  As a result, ARG has no interest in the patent and thus has no standing to affirmatively bring an infringement action against Plaintiff.

Without such standing, a declaratory judgment against ARG does not grant Plaintiff any relief.  See Travel Sentry, 2006 U.S. Dist LEXIS 87292, at *6-7 (granting motion to dismiss for lack of subject matter jurisdiction, where defendant company had no right to patent and thus had no right to sue declaratory relief plaintiff for patent infringement).

> **b.    A Parent Company Of A Patent Holder Is Not A Proper Defendant For A Declaratory Relief Claim.**

The Complaint alleges, on information and belief, that ARG has "direction and control" over Bonutti Skeletal apparently because ARG is Bonutti Skeletal's indirect parent company. (See Compl. ¶¶ 32, 42, 45.)  ARG's ownership and alleged control of Bonutti Skeletal does not create a case or controversy for a declaratory relief claim for invalidity or non-infringement because ARG lacks a present, direct interest in the '896 Patent.

The Federal Circuit and district courts across the country have consistently held that a parent corporation that does not own the patents-in-suit does not have standing to bring an infringement action, where its subsidiary is the patent owner or licensee.  See, e.g., Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1317-19 (Fed. Cir. 2010) (holding that parent and sister companies of actual patent owner lacked standing to sue for infringement); Merial Ltd v. Intervet, Inc., 430 F. Supp. 2d 1357, 1361-63 (N.D. Ga. 2006) (granting motion to dismiss parent corporation's infringement suit; finding that "standing under the Patent Act cannot be based on the mere fact that Merial SAS is a wholly-owned subsidiary of Merial"); Depuy, Inc. v. Zimmer Holdings, Inc., 384 F. Supp. 2d 1237, 1239-41 (N.D. Ill. 2005) (granting motion to dismiss parent corporation's infringement suit; finding that "[f]or this is the garden-variety case … in which suit is brought by an entity that does not own the property right that it is suing to enforce."); Beam Laser Sys., Inc. v. Cox Commun'ns, Inc., 117 F. Supp. 2d 515,

- 7 -

520-21 (E.D. Va. 2000) (granting motion to dismiss sole shareholder's infringement suit; finding that "[o]wnership of corporate stock does not create equitable title in that corporation's property."); Site Microsurgical Sys., Inc. v. The Cooper Cos., Inc., 797 F. Supp. 333, 337-39 (D. Del. 1992) (denying motion for leave to join parent corporation in infringement suit; finding that "Site [subsidiary] holds legal title to the patents and it is a separate, operational corporation. Iolab [parent] cannot be deemed to 'effectively control the patent' merely because it owns and exercises control over its subsidiary." (internal citations omitted)).

The decision in Top Victory Electronics v. Hitachi, Ltd., No.C10-01579CRB, 2010 U.S. Dist. LEXIS 125003 (N.D. Cal. Nov. 1, 2010), is on point. There, Hitachi, Ltd., once owned a series of patents that it assigned to its subsidiaries. 2010 U.S. Dist. LEXIS 125003, at *2-3. Plaintiffs brought a declaratory relief action seeking a non-infringement determination against Hitachi and another company concerning Hitachi's former patents. Id. at *1. Hitachi moved to dismiss for lack of subject matter jurisdiction; the Court granted the motion. The Court recognized that because only a party with legal title to a patent, i.e., the owner or exclusive licensee, has standing to bring an infringement suit, only such a party is a proper defendant for non-infringement declaratory relief action concerning such a patent. Id. at *7-9. The Court stated: "That a corporate parent's subsidiary owns a patent is not enough to establish that the parent has rights in the subsidiary's patents." Id. at *11 (citation omitted). See GMP Tech., LLC v. Zicam, LLC, No. 08-C-7077, 2009 U.S. Dist LEXIS 115523, at 5-6 (N.D. Ill. Dec. 9, 2009) (dismissing declaratory relief against parent company, where the parent company did not own or have an exclusive license for the patents); see also Newmatic Sound Sys. v. Magnacoustics, Inc., No. C 10-00129 JSW, 2010 U.S. Dist. LEXIS 40018, at *4-10 (N.D. Cal. Apr. 23, 2010).

MEMORANDUM OF POINTS AND AUTHORITIES

Ultimately, ARG's purported control and ownership of Bonutti Skeletal does not translate into ownership or any interest in the '896 Patent.  Since ARG could not affirmatively sue for infringement, it is a not proper party for declaratory relief.

## 2. The Complaint Also Does Not Allege ARG Took Any Affirmative Act To Enforce Any Right Concerning The '896 Patent.

Even if the Complaint alleged that ARG had an interest in the patents-in-suit, the declaratory relief claims still would fail.  "[T]o establish an injury in fact traceable to the patentee, a declaratory judgment plaintiff must allege both (1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity."  Ass'n for Molecular Pathology v. United States PTO, 653 F.3d 1329, 1343-48 (Fed. Cir. 2011) (internal citations omitted); see also SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380-81 (Fed. Cir. 2007) (discussing affirmative act requirement).

The Complaint does not allege any affirmative conduct by ARG to assert the '896 Patent against Plaintiff.  (See Compl. passim.)  Instead, the Complaint admits that Bonutti Skeletal filed the Infringement Action.  (Compl. ¶ 29.)  The Complaint does not (and cannot) allege that ARG is a party to that suit.  (See Compl. passim.)  As a result, the Complaint does not state an injury-in-fact for Claims 1 or 2.  See, e.g., Innovative Therapies, Inc. v. Kinetic Concepts, Inc., 599 F.3d 1377, 1382 (Fed. Cir. 2010) (affirming dismissal of a declaratory judgment claim due to plaintiff's failure to plead an affirmative act by the patent holder).

## C. Plaintiff's State Law Claims Fail Because the Conduct That Forms The Gravamen Of These Claims Is Privileged.

For the four (4) State Claims, Plaintiff complains that Mitchell purportedly accessed Plaintiff's publicly available website.  (Compl. ¶¶ 50, 56, 64, 70.)  However, Plaintiff's real complaint – and only supposed injury – is that Bonutti Skeletal used this information to "bring a

MEMORANDUM OF POINTS AND AUTHORITIES

patent infringement action against [Plaintiff] in the District of Delaware."[2]  (Compl. ¶¶ 55, 63, 68.)  The Noerr Pennington doctrine and Massachusetts litigation privilege each shield a party from liability for exercising that party's right to petition.  As such, each of the State Claims must be dismissed.

          1.       **The Noerr Pennington Doctrine Bars The State Laws Claims Because They Are Based On Protected Activity.**

Filing and prosecuting a lawsuit is protected First Amendment activity that cannot serve as a basis for a claim under the Noerr Pennington doctrine.  The Noerr Pennington doctrine protects the right to "petition" in court and other fora, as well as all statements presented to support such petitions.  Davric Maine Corp. v. Rancourt, 216 F. 3d 143, 147 (1st Cir. 2000).  The Noerr Pennington doctrine extends to federal and state law claims.  Tomaiolo v. Mallinoff, 281 F.3d 1, 11 n. 9 (1st Cir. 2002) ("the courts have extended [the Noerr Pennington doctrine] to other federal statutes that provide causes of action so broad as potentially to chill the constitutionally protected right to petition the government."); see also, e.g., BE&K Constr. Co. v. NLRB, 536 U.S. 516, 524-28 ("This case raises the same underlying issue of when litigation may be found to violate federal law, but this time with respect to the NLRA rather than the Sherman Act."); Bio-Technology Gen. Corp. v. Genentech, Inc., 267 F.3d 1325, 1332-33 (Fed. Cir. 2001) (affirming dismissal of antitrust and state law claims based upon Noerr Pennington doctrine).[3]

---

[2] Count III's breach of contract claim only generally avers an injury.  (Compl. ¶ 50.)  However, the only purported harm arising from the alleged breach of the TOU is the filing and prosecution of the Infringement Action.

[3] See, e.g., Theme Promotions, Inc. v. News Am. Marketing FSI, 546 F.3d 999, 1006-08 (9th Cir. 2008) ("because Noerr-Pennington protects federal constitutional rights, it applies in all contexts, even where a state law doctrine advances a similar goal"); New West, L.P. v. City of Joliet, 491 F.3d 717, 722 (7th Cir. 2007) ("Noerr-Pennington has been extended beyond the antitrust laws, where it originated, and is today understood as an application of the first amendment's speech and petitioning clauses."); Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'n, Inc., 858 F.2d 1075, 1082-83 (5th Cir. 1988) ("There is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust.").

MEMORANDUM OF POINTS AND AUTHORITIES

Civil liability cannot be based upon Bonutti Skeletal's filing and prosecution of the

Infringement Action because the Noerr Pennington doctrine protects those activities.  Davric

Maine Corp., 216 F. 3d at 147 (granting summary judgment; holding that Noerr Pennington

doctrine protects petitions in court and other bodies); 24 Hour Fitness U. S. v. Annis, No. 04-257-

SM, 2004 U.S. Dist. LEXIS 23702, at *7-12 (D.N.H. Nov. 18, 2004) (dismissing counterclaim;

holding Noerr Pennington doctrine barred claim based upon prior and instant lawsuits); see also

BE&K Constr. Co., 536 U.S. at 523-24.

Indeed, in a substantially similar case, Anderson v. Atlantic Recording Corp., No. 07-CV-

934-BR, 2009 U.S. Dist. LEXIS 106390 (D. Or. Nov. 12, 2009), the court held that the Noerr

Pennington doctrine barred state law claims based upon the defendants' pre-filing investigation of

their copyright claims.  There, Atlantic Recording and other record companies conducted a pre-

suit investigation that included engaging a vendor to monitor networks for trafficking in their

copyright protected music, and then download copyright protected works to learn the internet

protocol (IP) address for an infringer's computer and network.  2009 U.S. Dist. LEXIS 106390, at

*2-3.  The record companies then used the information obtained from the pre-suit investigation to

file suit and, through a subpoena, to compel internet service providers to identify account holders.

Id. at *3-4.  With the account holder identities, the record companies filed separate suits.  Id. at

*4-5.  Anderson filed suit alleging various federal and state law claims challenging the pre-suit

investigation and the record companies' lawsuits.  Id. at *5-6.  The district court granted the

record companies' summary judgment, holding, in part, that the pre-suit investigation was

incidental to the lawsuits, and thus was protected activity under the Noerr Pennington doctrine.

Id. at *12-16, 25-26.  See, e.g., Thomas v. Housing Auth. of County of Los Angeles, No. CV 04-

6970 MMM (RCx), 2005 U.S. Dist. LEXIS 46426, at *40-43 (C.D. Cal. June 3, 2005) (Noerr

Pennington barred suit; "defendants' investigation into Welven's actions is 'conduct incidental to

the prosecution of the [unlawful detainer] suit,' since it formed the basis for HACOLA's decision to sue) (citing, e.g., Smith v. Combustion Eng'g, Inc., 856 F.2d 196 (6th Cir. 1988) (table case)).

In this case, accessing Plaintiff's website and reviewing Plaintiff's statements and information about its products was part of a pre-suit investigation to determine if Plaintiff's products infringed upon the '896 Patent.  Pre-suit patent investigations often entail review of a prospective infringement defendant's statements in advertising, promotional materials, and product information.  See, e.g., Intamin, Ltd. v. Magnetar Techs. Corp., 483 F.3d 1328, 1338 (Fed. Cir. 2007) (reasonable pre-suit investigation included, *inter alia*, "review[ing] publicly available documents on [defendant's] brakes"); Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1300-03 (Fed. Cir. 2004) (reasonable pre-suit investigation included, *inter alia*, reviewing "statements made in the advertising and labeling of the accused product").   Here, the Complaint alleges that the information by Mitchell and ARG was ultimately transmitted to Bonutti Skeletal and used to file the Infringement Action.  (Compl. ¶¶ 24, 31, 55, 63, 68.)  As a result, Mitchell and ARG's pre-suit investigation was incidental to the lawsuit, similar to the case in Anderson and Thomas.

Accordingly, Mitchell and ARG's pre-suit investigation and ultimately Bonutti Skeletal's filing and prosecution of the Infringement Action are protected activity under the Noerr Pennington doctrine.  Therefore, these claims fail.

**2.      The Massachusetts Litigation Privilege Also Bars The State Law Claims.**

The litigation privilege also protects the challenged conduct.  Int'l Floor Crafts, Inc. v. Adams, 477 F. Supp. 2d 336, 340 (D. Mass 2007).  The privilege applies to:  (1) any communication, whether oral or in writing, to a prospective defendant that (2) relates to a judicial proceeding which is contemplated in good faith and under serious consideration.  Sriberg v. Raymond, 370 Mass. 105, 109 (1976).  The privilege encompasses not only communications

- 12 -

during a lawsuit, but also communications of a party, witness or an attorney "preliminary to litigation." Encompass Ins. Co. of Mass. V. Giampa, 522 F. Supp. 300, 308 (D. Mass. 2007); Shirokov, 2012 U.S. Dist. LEXIS 42787, at *61 (citing Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 242 (2008)) (the litigation privilege also applies to "communications by a party as long as the other conditions for privilege are present."). The privilege bars all civil liability based upon an attorney or a party's statements, and "provides a complete defense even if the offensive statements are uttered maliciously or in bad faith." Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140 (1996)).

The filing and prosecution of the Infringement Action squarely falls within the privilege. The Complaint alleges that ARG was "providing Bonutti with information and directing Bonutti to bring a patent infringement action against ConforMIS." (Compl. ¶¶ 24, 31, 55, 63, 68). Any alleged act of "providing" information or "directing" the filing of the Infringement Action qualifies as communication under the litigation privilege. Bonutti Skeletal used the information and filed the Infringement Action as a litigant to achieve objects of litigation that relate to a judicial proceeding contemplated in good faith, i.e., to exercise its patent rights based upon the pre-suit investigation of potential infringement. Since the petitioning of the Infringement Action and any communications made by ARG to Bonutti Skeletal regarding the same are immune from suit, the State Claims premised on that lawsuit and related communications must be dismissed. See, e.g., Int'l Floor Crafts, 477 F. Supp. 2d at 340 (dismissing counterclaim, stating that "the filing of a complaint is privileged and thus that act, alone, is insufficient to form the basis of a counterclaim for tortious interference."); Visnick v. Caulfield, 73 Mass. App. Ct. 809, 812 (2009) (defendant granted summary judgment on unlawful interference claim arising from pre-suit letter to plaintiff's employer); Beecy v. Pucciarelli, 387 Mass. 589, 593-94 (1982) (action for malicious

prosecution barred against attorney who filed underlying lawsuit with client's authority and in good faith).

The State Claims all rely on the purported injury resulting from ARG's diligence on Plaintiff's products that helped form the basis for the typical pre-suit investigation which ultimately led to Bonutti Skeletal filing of the Infringement Action.   (See Compl. ¶¶ 49-50, 55-56, 63-64, 68-71.)  Plaintiff cannot end-run the litigation privilege by alleging other claims which rely on the filing of the lawsuit or the communicative acts that led to the filing of the lawsuit. See, e.g., Nutter, McClennen & Fish, 41 Mass. App. Ct. at 140-41 (the litigation privilege "protects the maker from any civil liability based thereon . . . . To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory.").

> **D.** **The Breach of Contract Claim Fails.**

>> **1.** **The Complaint Fails To Allege A Valid Contract.**

The Complaint fails to plead facts sufficient to support the existence of a contract between Plaintiff, and ARG and Mitchell.  For breach of contract, a plaintiff must allege:  (1) the existence of a valid and binding contract; (2) the defendant's breach of the terms of the contract; and (3) that the plaintiff has suffered damages from the breach.  Ruggers, Inc. v. U.S. Rugby Football Union, Ltd., 843 F. Supp. 2d 139, 144 (D. Mass. 2012).

Courts have classified terms of use for websites as either:  (i) "click-wrap" agreements, when a user must check a box acknowledging that they have read and agree to the terms before viewing the content, or (ii) "browsewrap" agreements, when the terms claim to bind any user who simply views the webpage.  Courts have routinely found that so-called "browsewrap" agreements are not enforceable where there is no showing that the user viewed the terms of use or manifested agreement to be bound by them.  See, e.g., In re Zappos.com Sec. Breach Litig., 2012 U.S. Dist. LEXIS 141803, at *20-21, *27-28 (D. Nev. Sept. 27, 2012) (holding that the Terms of Use on

Zappo.com's website were not binding because the court "cannot conclude that Plaintiffs ever viewed, let alone manifested assented to, the Terms of Use," and adding that "the advent of the Internet has not changed the basic requirements of a contract, and there is no agreement where there is no acceptance, no meeting of the minds, and no manifestation of assent.  A party cannot assent to terms of which it has no knowledge or constructive notice."); Bagg v. HighBeam Research, Inc., 862 F. Supp. 2d 41, 44 (D. Mass 2012) ("Without clear evidence that Plaintiffs assented to an agreement [on defendant's website] that contained a forum selection clause, the court cannot enforce such a clause.").

Here, the Complaint contains only conclusory allegations that ARG, through Mitchell, "entered into a contract with ConforMIS" and that Mitchell "agreed" to the TOU.  (Compl. ¶¶ 47, 49.)  The Complaint, however, does not plead any facts as to whether Mitchell viewed, or manifested assent to, the TOU.  (Compl. passim.)  The Complaint is silent as to whether the TOU even was prominently displayed on ConforMIS' website.  Without such allegations, the Complaint has failed to plead the existence of a contract with ARG and Mitchell.

## 2. The Complaint Fails To Allege A Breach Because Neither ARG Nor Mitchell Used The Information Obtained From The Website For A Commercial Purpose.

Even if the Complaint alleged a valid agreement, the breach of contract claim still fails because the Plaintiff cannot show that the information was used for any "commercial purpose."  The Complaint offers the conclusory allegation that ARG violated the Terms of Use by using information for "commercial purposes."  (Compl. ¶¶ 49, 55, 63, 68.)  However, the only actual use alleged by Plaintiff is that Bonutti Skeletal asserted its patent rights based upon this information.  Asserting patent rights is protected conduct and simply cannot serve as the basis for Plaintiff's breach of contract claim.  (See Sections III.C.1 & 2.)

The TOU language itself does not support that commercial use ever was intended to encompass such protected conduct.  Section 2 of the TOU states that the "Site is not intended for" anyone who "may provide products or services that compete with any ConforMIS product." (Compl., Ex. B § 2.)  This demonstrates that the purpose of the TOU is to prevent competitors from using the information available on the website to compete with Plaintiff, which is in line with case law addressing breaches of website Terms of Use.  Cvent, Inc. v. Eventbrite, Inc., 739 F. Supp. 2d 927, 931-32 (E.D. Va. 2010) (explaining purpose of TOU was to protect website from copying); See also Donna M. Sherry, Doing Business On-Line, Mass. Continuing Legal Educ., DUE MA-CLE-10-I10.2.8, § 10.2.8 (2010). [4]

Indeed, Section 28 of the TOU provides:  "If you have any copyright concerns about any materials posted on this Site by others, please let ConforMIS know."  (Compl., Ex. B at § 28.) Thus, Plaintiff itself expressly recognized that identifying intellectual property violations is permitted by its TOU, and is not impermissible commercial use of its website.  See Anderson, 2009 U.S Dist. LEXIS 106390, at *25-26 (rejecting commercial use argument for pre-suit investigation of copyright infringement).

> **E.    The Misappropriation Claim Fails Because The Complaint Does Not Adequately Plead That The Information Was Proprietary Or Any Reasonable Steps to Preserve The Secrecy Of The Information.**

To establish a cause of action for misappropriation of proprietary and confidential business information, a plaintiff must show that:  (1) the information constitutes confidential proprietary or business information; (2) the plaintiff took reasonable steps to preserve the secrecy

---

4 Compare Hotmail Corp. v. Van Money Pie, Inc., Case No. C98-20064 JW, 1998 U.S. Dist. LEXIS 10729 (N.D. Cal. April 16, 1998) (court held that defendant had violated Hotmail's Terms of Service by accessing the account to send spam advertising its services or for other commercial purposes) & Ticketmaster L.L.C. v. RMG Techs., Inc., 507 F. Supp. 2d 1096, 1102-07 (C.D. Cal. 2007) (commercial use found where the defendants used the plaintiff's services in a way to generate sales for themselves) with Tropeano v. Atlantic Monthly Co., 379 Mass. 745 (1980) (magazine's use of plaintiff's photo was not commercial in nature, despite the fact that the magazine engaged in the business of publishing a magazine for profit).

of the information; and (3) the defendant obtained the information in an improper manner.  USM Corp. v. Marson Fastner Corp., 379 Mass. 90, 98 (1979).  In evaluating whether the plaintiff took reasonable steps to secure the information the courts consider:  (i) the existence or absence of an express agreement restricting disclosure; (ii) the nature and extent of security precautions taken by the possessor to prevent acquisition of the information by unauthorized third parties; (iii) the circumstances under which the information was disclosed to (any) employee; and (iv) the degree to which the information has been placed in the public domain or rendered "readily ascertainable" by the third parties through patent applications or unrestricted product marketing.  Id.

While the Complaint contains conclusory allegations that the information available on its website was proprietary and confidential, the allegations as a whole tell a very different story. Any random person may access any information on Plaintiff's website simply by providing information during the so-called registration process.[5]  (Compl. ¶ 17.)  The Complaint contains no allegations that any portion of the website was password protected, that Plaintiff verified or even reviewed the information users provided during registration before allowing access to the website, or that users even were presented with the TOU before accessing any information on the website. This claim must fail because the information posted on Plaintiff's website was simply not confidential and was not protected.

**F.    The Unfair and Deceptive Trade Practices Claim Fails Because The TOU Is Not A Valid Agreement.**

Under Massachusetts law, a practice or act will be "unfair" under the consumer protection statute if it is: (1) within penumbra of common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.  Akar v. Fed. Nat'l Mortg. Ass'n, 845 F. Supp. 2d 381 (D.

---

[5] Indeed, Section 16 of the TOU states: "You acknowledge that the Public Forums and features offered therein are for public and not private communications, and you have no expectation of privacy with regard to any Submission to the Public Forum."  (Compl. Ex. B at § 16.)

Mass. 2012).  Here, Plaintiff is simply trying to reallege breach of contract, with the added element that ARG and Phillip never intended to abide by the terms of the TOU.  (Compl. ¶ 63.)

Plaintiff alleges that ARG and Phillip entered into the TOU with the intent to use the information for commercial purposes.  (Compl. ¶¶ 62, 63.)  This claim must fail because, for the reasons discussed above, the TOU is not a valid agreement.  (See Section III.D.1.)  Moreover, as discussed above, ARG and Mitchell's use of the information did not constitute commercial use and instead constituted protected activity.  (See Section III.D.2.)  Finally, as discussed above, Plaintiff has not suffered any actionable injury.  (See Sections III.C.1 & 2.)

### G.    The Misrepresentation Claim Fails Because The Complaint Does Not Allege Any Misrepresentation Or Reliance.

For an intentional misrepresentation claim, a plaintiff must allege that: (1) privity exists between the parties; (2) the defendant made a false misrepresentation of material fact; (3) the defendant acted with knowledge of its falsity; (4) the defendant acted with the purpose of inducing the plaintiff to act on misrepresentation; and (5) the plaintiff relied on misrepresentation to its detriment.  Int'l Floor Crafts, 477 F. Supp. 2d at 341; United Air Lines, Inc. v. Gregory, 716 F. Supp. 2d 79, 84 (D. Mass 2010).  For negligent misrepresentation a plaintiff must show the same elements, except that it is sufficient if the defendant simply made the statement without reasonable basis for believing it to be true.  Lawton v. Dracousis, 14 Mass. App. Ct. 164, 171 (1982); Capitol Indem. Corp. v. Freedom House Dev. Corp., 487 F. Supp. 839, 842 (D. Mass. 1980).  These facts must be alleged with particularity.  Fed. R. Civ. P. 9(b).

Plaintiff attempts to allege that Mitchell and ARG misrepresented their identities to access Plaintiff's website.  However, the facts set forth in Complaint show that when Mitchell accessed Plaintiff's website, he provided accurate information about his identity because Plaintiff was able to contact Mitchell.  Indeed, based on the information Mitchell provided, Plaintiff contacted him on or about June 7, 2012.  (Compl. ¶ 25.)

The Complaint does not even allege what information Mitchell provided, much less what information was false when he provided it.  Instead, the Complaint makes the conclusory allegation that Mitchell and ARG "made misrepresentations."  (Compl. ¶ 68.)  These allegations do not satisfy the heightened pleading standard of Rule 9(b).  North Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13-14 (1st Cir. 2009) (affirming dismissal where complaint contained only general averment of the defendant's "knowledge" of material falsity); Blacksmith Invs., LLC v. Cives Steel Co., 228 F.R.D. 66, 73 (D. Mass. 2005) (dismissing claims based in fraud where there was no specificity as to the allegedly misleading comments).

Furthermore, Plaintiff does not allege that it relied on Mitchell or ARG's alleged misrepresentations.  Nothing in the Complaint suggests that Plaintiff relied on any statement by Mitchell or ARG for any purpose.  There is no allegation that Plaintiff reviewed the information Mitchell provided before allowing him access to the website.  Instead, the facts alleged suggest that Plaintiff did not review the information Mitchell provided until many days *after* Mitchell was allowed access to the website.[6]  This lack of reliance also precludes a misrepresentation claim.  Blacksmith Invs., LLC, 228 F.R.D. at 72-73.

## III.   CONCLUSION

Based upon the foregoing reasons, Defendants ARG and Mitchell respectfully request that the Court grant their motion and dismiss this action against them.

---

[6] Plaintiff contacted Mitchell on June 7, 2012, two weeks after Mitchell allegedly registered for and accessed the website on May 23, 2012.  (Compl. ¶¶ 17, 25.)

Respectfully submitted,

ACACIA RESEARCH
GROUP LLC and PHILLIP MITCHELL

By their Attorneys,

  /s/ Joseph P. Messina
Joseph P. Messina, BBO#559328
jmessina@gilmanclark.com
Robert R. Gilman, BBO# 645224
rgilman@gilmanclark.com
Gilman Clark Hunter & Messina, LLC
176 Federal Street, Fourth Floor
Boston, MA  02110
617-830-5440 (telephone)
617-737-8056 (facsimile)

Counsel:

MARC J. SCHNEIDER, State Bar No. 214609
  mschneider@sycr.com
STEPHEN L. RAM, State Bar No. 240769
  sram@sycr.com
MATTHEW T. MONTGOMERY, State Bar No. 260149
  mmontgomery@sycr.com
STRADLING YOCCA CARLSON & RAUTH
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  (949) 725-4000
Facsimile:  (949) 725-4100


Dated: April 22, 2013

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 22, 2013.


/s/ Robert R. Gilman
Robert R. Gilman